United States District Court
Southern District of Ohio
Western Division

| | | |
|---|---|---|
| **BRIAN PATTON & JENNIFER PATTON**<br>4900 U.S. Highway 227<br>Worthville, Ky 41098<br>on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>**JEFF WYLER EASTGATE, INC.,**<br>c/o Donald W. White, statutory agent<br>237 Main St.<br>Batavia, Ohio 45103<br>    Defendant. | :: | Case No. 1:06cv10<br><br>DLOTT<br><br>J. BLACK |

**CLASS ACTION COMPLAINT TO ENFORCE CIVIL LIABILITY PURSUANT TO THE FEDERAL TRUTH-IN-LENDING ACT, SEEKING STATUTORY DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF, ATTORNEY FEES; JURY TRIAL**

PLAINTIFFS, BRIAN PATTON and JENNIFER PATTON, on behalf of themselves and all others similarly situated, sue defendant, JEFF WYLER EASTGATE, INC, and allege as follows:

### COUNT I -Truth in Lending Act

### PREAMBLE & GENERAL ALLEGATIONS

1.     This is an action for statutory penalties and damages and for declaratory and injunctive relief, brought pursuant to the Truth in Lending Act, 15 U.S.C. §1601, et seq. [hereinafter the "Act"] and 12 C.F.R. 226.1, et seq. [hereinafter Reg. Z]. It is brought on behalf of a class of consumers where Count I alleges that defendant, as creditor-seller, intentionally failed to comply with the Federal Truth In Lending Act by providing plaintiffs and the putative class with retail installment contracts (RISCs) containing financial disclosures that were meaningless because the disclosures were subject to unilateral change by defendant after the buyers signed the RISCs agreeing to the offered terms. The size of the class is limited only by the applicable statute of limitations, i.e., and is estimated to greatly exceed 1,000 members. Plaintiffs allege that the class period began on January 10, 2005 and continues forward to include all persons who have been victimized by the unlawful practices described herein. TILA provides in pertinent part that its purpose is to assure a meaningful disclosure of credit terms so that the

consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit. The defendant is the one and only creditor in plaintiffs' and in the putative class's retail installment transactions, i.e, credit sales. The plaintiffs' and the putative class's retail installment contracts were consummated at the time the buyers signed a RISC presented to them by defendant and defendant delivered to them the purchased motor vehicles. Plaintiffs and the putative class are consumers. At all times relevant hereto defendant was an Ohio corporation licensed to do business in Ohio, was a motor vehicle dealer as defined under Ohio law, was engaged in trade or commerce with motor vehicles, and was licensed as a motor vehicle finance company pursuant to Ohio's Retail Installment Sales Act which was enacted to ensure defendant's adherence to TILA.

2. Plaintiffs further allege that when presented to them by defendant the RISC terms were entirely illusory because, when plaintiffs and the class of persons they seek to represent signed a RISC agreeing with the terms, defendant considered each and every provision in the RISC to be non-final and subject to change at defendant's whim, to wit: Defendant denies that it's the installment creditor, claiming that the "creditor" is some as-yet unknown third party to whom defendant may choose to assign the RISC. Defendant contends that some time after plaintiff and the class members signed a RISC and took delivery of the purchased motor vehicles, if defendant chooses to sell its obligation to a third party (as opposed to cancelling and changing the terms) it is at the time of assignment that "consummation" takes place. As a consequence of this procedure defendant itself is never bound to TILA's mandates and is never obligated under any RISC. If defendant chooses not to sell the RISC to a third party it will either unilaterally cancel the RISC and retake possession of the sold vehicle, or will change the terms of the RISC and require the buyer to sign a second, unbargained-for RISC or lose their purchased vehicle.

3. Defendant facilitates its financing procedure through the use of a waiver form of its own creation euphemistically entitled a "Purchase Spot Delivery Agreement," i.e., a unilateral waiver/rescission form. Plaintiffs allege that defendant's rescission form is an illegal waiver of defendant's obligations and of plaintiffs' and the class's rights under the RISC and under TILA, which Act mandates that retail installment contracts when signed by the buyer are the final written financing expression between the parties and is binding on both the defendant-creditor and the buyers. As used by defendant the rescission form purports to relieve the defendant from its contractual obligations and to waive the buyers' (plaintiff's and the class's) right to rely upon the RISC as the final written expression of the parties' agreement.

4. During the class period as hereinafter defined is consistent with the TILA limitations period, defendant has invariably violated TILA and Regulation Z in each of its credit sales by using illusory TILA disclosures in its RISCs including the APR, the Finance Charge, the Amount Financed, the Total of Payments, the Total Sale Price and every other term in the plaintiffs' and the putative class's RISCs because, at the time of consummation as defined by TILA, the disclosures were subject to subsequent change or cancellation at defendant's sole and

arbitrary discretion; plaintiffs' case being typical of the class.

5. Defendant's acts and omissions are violations of TILA as TILA's purpose is to assure a meaningful disclosures of credit terms so that consumers will be able to compare more readily the various credit terms available to him or her and avoid the uninformed use of credit.

6. In practice the defendant purportedly conditions the plaintiffs' and the putative class's RISCs on defendant's ability to sell its contractual obligation to a third party, thus defining consummation as that point in time when a third party buys defendant's RISC, sometimes days or weeks after the buyer signs a RISC and accepts delivery of the purchased motor vehicle.  TILA mandates that consummation occurs at the time that buyers sign the RISC.

7. The harm that is or may be visited upon all retail buyers and members of the class by the defendant is what happened to the plaintiffs.  That is, defendant's scheme is to deliver a new or used car to each retail buyer the same day the buyer sets foot on defendant's lot in order to take them out of the car-buying market.  During the transaction defendant's words and deeds are designed to convince buyers that they are purchasing and financing a motor vehicle at specific price and specific financial terms which, when defendant obtains the buyers' signatures on the retail installment contract, represents to the buyers that the financial terms are accepted, are final, and cannot be changed unilaterally.  But by defendant obtaining customer signatures on its waiver form, the defendant is surreptitiously and illegally reserving to itself the unilateral and arbitrary ability to change the terms of the contract or to revoke the contract and reacquire the motor vehicle.  Later, if a buyer does not acquiesce to different and unbargained-for terms, or if defendant chooses to revoke the contract, defendant will retake possession of the motor vehicle and leave the buyer without transportation while retaining the buyer's down payment and/or trade-in.

## Jurisdiction

8. This class action claim is made pursuant to the Federal Truth-in-Lending Act, 15 U.S.C. 1601, et seq. (hereinafter referred to as the "Act.").

9. The jurisdiction of this Court is invoked pursuant to 15 U.S.C. **§**1640(e) and 28 U.S.C. **§**1337.

10. This claim is brought as a class claim by plaintiffs on behalf of themselves and allsimilarly situated persons pursuant to the Federal Rules of Civil Procedure, Rule 23.

### Parties

11. Named plaintiffs, **Brian and Jennifer Patton [hereinafter "named plaintiffs"]** and the class of persons they seek to represent are "**consumers**", as defined in the Act at 15 U.S.C. **§**1602(h), who entered into consumer credit transactions for the financing of certain motor vehicles which they purchased from defendant in the form of retail installment sales contracts or obligations [hereinafter referred to as RISC's].

12. Defendant, **Jeff Wyler Eastgate, Inc**. **[hereinafter referred to as "Wyler"** or **"defendant"** is a **"creditor"**, as defined in the Act at 15 U.S.C. **§1602(f)**, who, in the ordinary course of its business directly financed the sale and purchase of certain motor vehicles pursuant to retail installment sales contracts.

### Allegations

13. On or about November 10, 2005, plaintiffs visited defendant's dealership at 1117 State Route 32, in Batavia, Ohio and purchased a used 2003 Ford Windstar minivan, VIN: 2FMZA534138A11099. At that time defendant represented that plaintiffs' credit was approved and financing was complete at the terms reflected in a retail installment sales contract. Plaintiffs agreed to the terms and signed the RISC, at which time defendant delivered the Windstar to the plaintiffs. (See copy of the RISC attached as plaintiffs' exhibit "A".)

14. Among the many purchase, finance, insurance, and state-required documents that defendant prepared and presented to the plaintiffs was a unilateral rescission document it calls a "Purchase Spot Delivery Agreement." This "agreement" purports to allow defendant to unilaterally cancel the contract "in the event the dealership is unable to assign the Retail Installment Sales Contract to a third party," or if defendant unilaterally cancels the RISC or changes the terms to its pecuniary advantage. Under all circumstances defendant considers the sold vehicle to be owned by defendant until such time, if at all, it actually sells the RISC to some third party. Defendant required the plaintiffs and the class members to insure the vehicle at their own expense. (A copy of defendant's waiver form, the so-called "Purchase Spot Delivery Agreement" is attached as plaintiffs' exhibit "B".)

15. On or about December 21, 2005 Defendant did, in fact, unilaterally cancel plaintiffs' RISC as written and demanded return of the Windstar. Ultimately, defendant took the purchased vehicle from the plaintiffs and were refused, at that time, to return the plaintiffs' trade-in, a 1989 Oldsmobile Cutlass worth $1,730.

## CLASS ACTION ALLEGATIONS

16. Plaintiffs bring this action on behalf of themselves and all other individuals similarly situated as defined below.  This action is maintainable as a class action pursuant to Rules 23(a) and 23(b)(1), (b)(2) and (b)(3) federal rules of civil procedure for monetary statutory damages, injunctive and declaratory relief.

17. The class is defined as:

> All persons who have signed a retail installment contract with defendant and whose signatures were also obtained by defendant on a form purporting to give defendant the unilateral right to cancel the contract, and whose initial retail installment contract was later unilaterally cancelled by defendant, said class size restricted between January 10, 2005 and the present date and as long as the unlawful conduct enumerated herein continues.

18. The members of the class are so numerous that joinder of all the members is impracticable.  While the exact number of class members can be determined only by appropriate discovery from defendant, based upon knowledge and information plaintiffs believe that the class includes well over one thousand members as defendant violates TILA in every consumer motor vehicle retail installment transaction.

19. Plaintiffs claims are typical of the claims of the members of the class.  Plaintiffs can fairly and adequately protect and represent the interests of the members of the class and have retained counsel competent and experienced in class action litigation.

20. A class action is superior to other available method for the fair and efficient adjudication of this controversy.  Since the damages suffered by individual members of the class may be relatively small, although not insignificant, the expense and burden of individual litigation makes it practically impossible for members of the class to effectively seek individual redress for the wrongful conduct of the defendant alleged in this complaint.

21. Common questions of law and fact exist as to all members of the class and predominate over any question solely affecting individual members of the class. The questions of law and fact common to the class include the following:

a. Whether the conduct of defendant alleged in this complaint is unlawful;
b. Whether the defendant's alleged conduct constitutes violations of 15 U.S.C. §1601(a), et seq., §1638, and Regulation Z, 12 C.F.R. §226.1 et seq.
c. Whether defendant's unilateral rescission form purports to waive or to circumvent defendant's obligations under TILA and the buyer-signed RISC and thus violates TILA.
d. The measure of penalties and damages available to plaintiff and to members of the class for the defendant's wrongful conduct; and
e. Whether defendant's alleged acts and practices should be declared violations of TILA and be permanently enjoined.

22. The prosecution of separate claims by individual members of the class would create a risk of (a) inconsistent or varying adjudications which could establish incompatible standards of conduct for the defendant; or (b) individual adjudications would as a practical matter be dispositive of the interests of other members of the class who are not parties, or would substantially impair or impede the ability of other members of the class who are not parties to the adjudications to protect their interests; and ©) the defendant has acted or refused to act on grounds generally applicable to all members of the class, thereby making declaratory and injunctive relief concerning the class as a whole appropriate.

## COUNT II-CONVERSION AND CIVIL THEFT

### Jurisdiction

23. This individual claim made is made pursuant to common law theft and conversion.

24. The jurisdiction of this Court is invoked pursuant to the principles of pendent or ancillary jurisdiction in that the claim herein arose out-of the same basic facts which gave rise to the federal claim.

### Parties

25. Plaintiffs, Brian and Jennifer Patton, are **"retail buyers"** who were parties to a retail installment sale as defined by O.R.C. §1317.01(G).

26. Defendant is a **"retail seller"** who was a party to a retail installment sale as defined in O.R.C. §1317.01(I).

### Allegations

27. Plaintiffs re-allege each and every allegation of claim one as if fully rewritten herein.

28. On or about November 10, 2005 the parties entered into a retail installment sales contract and transaction as defined in the Act at O.R.C. 1317.01(L) for the sale and financing of a motor vehicle previously described in claim one as a Ford Windstar.

29. On or about November 10, 2005 plaintiff gave their 1989 Oldsmobile Cutlass in trade in connection with the purchase and financing of a 2003 Ford Windstar van which trade was valued at $1730 by the defendant.

30. The purchase of the Windstar, however, was made conditional by defendant on it obtaining a third party financing source [see attached exhibit **"B"**].

31. Defendant was unable or unwilling to obtain third party financing for the Windstar and demanded the return of the Windstar.

32. Plaintiffs returned the vehicle but were informed by the defendant that their vehicle had already been sold and that it was unable to return it.

33. Defendant has wrongfully detained and removed plaintiffs' property thereby depriving plaintiffs from using it.

34. Defendant had no right to detain the property.

35. Plaintiff was prevented from use of his property only by defendant's actions in wrongfully detaining the property.

36. The conduct of defendant as described above constitutes conversion and civil theft.

37. Defendant acted to serve its own interests, knowing that such conduct would wrongfully deprive plaintiffs of their property.

38. At all times mentioned herein, defendant acted maliciously, wantonly and with reckless disregard for property the rights of the plaintiffs.

**Prayer for Relief**

Plaintiffs pray for the following relief:

(a) in claim one for a ruling from this Court finding this matter appropriate for class treatment;

(b) in claim one for a judgment for the lesser of $500,000 or 1% of defendant's net assets;

©) in claim one reimbursement for reasonable attorney fees for all time expended in connection with the prosecution of this claim;

(d) in claim one for a declaration that the practices and policies of the defendant are unlawful;

(e) in claim one for a determination that plaintiffs and the class of consumers that they

seek to represent have no adequate remedy at law and that they are entitled to injunctive relief;

(f) in claim two for compensatory damages;

(g) in claim two for punitive damages for malicious, wanton and willful misconduct;

(h) in all claims for reimbursement for all costs and expenses incurred in connection with each of these claims; and,

(i) for any and all other relief this Court may deem appropriate.

Respectfully submitted by:

/s/STEVEN C. SHANE
Steven C. Shane (Ohio Bar #0041124)
Trial Attorney for Plaintiffs
321 Fairfield Ave
P.O. Box 73067
Bellevue, KY 41073
(859) 431-7800
(859) 431-3100 facsimile
Shanelaw@fuse.net

and

/s/RAYMOND G. INGALSBE
Raymond G. Ingalsbe (Pro Hac Vice)
Trial Attorney for Plaintiffs
4400 PGA Boulevard, Suite 800
Palm Beach Gardens, FL 33410
(561) 775-3505
(561) 624-3533 facsimile
Ringalsbe@aol.com